Theodore R. EDIN, Respondent,

v.

JOSTENS, INC., Appellant.

No. C9–83–1274.

Court of Appeals of Minnesota.

Feb. 1, 1984.

Mark M. Nolan, St. Paul, Orville E. Fisher, Jr., Josten's General Counsel, Minneapolis, for appellant.

Gordon G. Busdicker, Wendy Wildung, Jeff H. Eckland, Minneapolis, for respondent.

Heard, considered, and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

FOLEY, Judge.

Jostens, Inc. appeals from a Hennepin County District Court order denying its motion for a temporary injunction restraining Theodore R. Edin from violating a restrictive covenant in an employment contract. Jostens argues that the district court erred in (1) considering respondent's claim that he was wrongfully terminated from employment in determining whether a temporary injunction should issue, (2) finding the balance of harm would be greater to respondent than to appellant if an injunction was granted and (3) finding appellant was unlikely to prevail on the merits. We affirm the denial of temporary injunctive relief.

## FACTS

Jostens is a nationwide company with multimillion dollar sales. Theodore Edin worked as a sales representative for Jos-

ten's some 23 years before he was abruptly terminated. Approximately every two years during his tenure a new employment contract was routinely executed. Each contract contained a restrictive covenant restraining him from selling similar products to his former customers for a period of one year immediately following termination of employment for any reason.

■ Jostens contends that Edin no longer wanted to work for the company and refused to sign his renewal contract. However, this court must view all facts in the light most favorable to the prevailing party. *Cramond v. American Fed. of Lab. & Cong. of Ind. Org.*, 267 Minn. 229, 126 N.W.2d 252 (1964).

The evidence shows that Edin did not sign the 1982–1984 renewal contract offered to him before the expiration of his 1980–1982 contract. Jostens' management induced him not to sign until clarification on two conflicting addenda attached to the renewal contract was received. While awaiting clarification, Edin unexpectedly received notice that he was terminated for failing to timely sign the renewal contract. Edin's success as a salesman is undisputed.

After his termination, Edin brought an action against Jostens for wrongful termination, and began selling similar products from another manufacturer to some of his former customers, in violation of the restrictive covenant.

Jostens brought a motion for summary judgment asking the court to enforce the restrictive covenant. The court treated the request as one for injunctive relief and denied it.

Upon the discovery of new evidence Jostens brought a motion for reconsideration and amended findings. The trial court again refused to grant injunctive relief.

These facts raise the following issue:

## ISSUE

Was the trial court clearly erroneous in denying temporary injunctive relief to Jostens.

## ANALYSIS

The factors to be considered in determining whether to grant preliminary injunctive relief were outlined in *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 137 N.W.2d 314 (1965) and reaffirmed in *Miller v. Foley*, 317 N.W.2d 710 (Minn.1982):

(1) the nature of the relationship between the parties before the dispute giving rise to the request for relief;

(2) the harm to be suffered by the moving party if the preliminary injunction is denied as compared to that inflicted on the non-moving party if the injunction issues pending trial;

(3) the likelihood of success on the merits;

(4) the public interest; and

(5) administrative burdens in enforcing a temporary decree.

■ In considering whether to grant equitable injunctive relief "the court must consider not only the nature of the business and character of the employment but all the circumstances of the case, including the situation of the parties, the necessity of the restriction for the protection of the employer's business, and the right of the employee to work and to earn a livelihood and better his status within the limits of his skill, talent, and continued productivity." *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 134 N.W.2d 892, 900 (1965).

■ Jostens first argues that the district court erred in considering respondent's claim that he was wrongfully terminated from employment in determining whether a temporary injunction should issue. We hold that the district court did not err in considering the equities.

"Ruling on motions for temporary injunction is largely an exercise of judicial discretion, and the sole question presented on appeal is whether there was clear abuse thereof by disregard of facts or *applicable principles of equity.*" *Cramond v. American Fed. of Lab. & Cong. of Ind. Org.*, 267 Minn. 229, 126 N.W.2d 252 (1964) (emphasis added); *Berggren v. Town of Du-*

*luth,* 304 N.W.2d 24 (Minn.1981); *Medtronic, Inc. v. Gibbons,* 684 F.2d 565, 567 (8th Cir.1982) (applying Minnesota law).

■ It has long been established that he who comes into equity must come with clean hands.

■ To deny injunctive relief because of the moving party's misconduct,

> "The misconduct need not be of such a nature as to be actually fraudulent or constitute a basis for legal action. The plaintiff may be denied relief where his conduct has been unconscionable by reason of bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others."

*Earle R. Hanson & Associates v. Farmer Coop. Creamery Co.,* 403 F.2d 65, 70 (8th Cir.1968) (applying Minnesota law); *Johnson v. Freberg,* 178 Minn. 594, 228 N.W. 159 (1929).

■ Here, the evidence indicates that Josten's management induced Edin into allowing his current contract to expire without signing the new contract, then terminated him for failing to timely sign the new contract. As a result of Jostens' conduct, Edin, a productive employee who dedicated his entire working life to the company, is left without employment at age 50 and suffering from a diabetic condition.

To grant Jostens' request for equitable relief under these circumstances would result in an unconscionable benefit to Jostens and injury to Edin.

"A man's right to labor in any occupation in which he is fit to engage is a valuable right, which should not be taken from him, or limited, by injunction, except in a clear case showing the justice and necessity therefor." *Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 134 N.W.2d 892, 899 (1965).

■ We decline to enforce a restrictive covenant where an employee has been wrongfully terminated. See *Rao v. Rao,* 718 F.2d 219 (7th Cir.1983).

Jostens next argues that the district court erred in its findings of irreparable harm. Jostens disagrees that the loss of company goodwill and potential disclosure of confidential information was minimal compared to the severe financial hardship Edin would suffer if a preliminary injunction was granted.

A federal court in Maryland held the balancing of the hardships is the most important factor among those to be weighed in determining if an injunction should be granted. See, *Blackwelder Furniture Co. v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir.1977) (applying Maryland law which is similar to Minnesota law).

Since Edin's termination, his former customers have been actively pursued by other Jostens representatives. The only evidence of dollar volume generated by Edin in 'competition' with Jostens is Edin's sale of approximately $55,000 worth of products during nine months following his termination from the company. From this he earned approximately $11,000 in commissions.

By comparison, during Edin's last years with Jostens he generated approximately $600,000 to $750,000 per year in gross sales for the company and earned approximately $150,000 per year in commissions.

■ In a proper case irreparable harm to the employer may be inferred if it can be shown that the employee breached an enforceable restrictive covenant. *Thermorama, Inc. v. Buckwold,* 267 Minn. 551, 125 N.W.2d 844 (1964).

However, this inference only applies when the employee fails to adequately rebut it. Here, the evidence indicates that Edin has exhausted 39% of his liquid assets to support himself and his family during the first nine months following his termination from Jostens. Additionally, the evidence indicates that since his termination, Edin's diabetic condition worsened. If an injunction issued Edin could be forced to file bankruptcy within a year.

■ We are satisfied from a careful review of the record that the trial court was not clearly in error in finding that the harm

suffered by Jostens, if an injunction is denied, would be less than that suffered by Edin if an injunction is granted.

Lastly, Jostens argues that the district court erred in concluding that it had not shown a likelihood of success on the merits.

■ The above discussion and evidence indicates that Jostens wrongfully terminated Edin's employment; that Edin has been harmed by the wrongful termination; that Jostens has not been significantly harmed by Edin's violation of the restrictive covenant; and that the equities decidedly favor Edin.

Based on these findings the trial court properly determined that Jostens was not likely to succeed on the merits and it would be inequitable to grant Jostens' motion for injunctive relief.

If Jostens should prevail at trial by evidence not apparent from this review, the trial court may consider both monetary damage and equitable relief if appropriate.

Affirmed.