**LOXTERCAMP, INC., Appellant,**

v.

**BELGRADE COOPERATIVE ASSOCIATION, Respondent,**

**Dale Bauer, Respondent.**

**No. CX–85–218.**

Court of Appeals of Minnesota.

May 21, 1985.

---

Gerald W. Von Korff, St. Cloud, for appellant.

Charles B. Fahlberg, Paynesville, for Belgrade Co-op.

Roger D. Neils, St. Cloud, for Bauer.

Considered and decided by WOZNIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Appellant Loxtercamp, Inc. appeals from the trial court's order denying its motion for a temporary injunction. We affirm.

## FACTS

Respondent Dale Bauer was employed by appellant Loxtercamp, Inc. as a petroleum route truck driver for approximately five years. Bauer's route served several hundred customers in the Elrosa area. Respondent Belgrade Cooperative was one of Loxtercamp's competitors in this area.

On October 15, 1984, Bauer informed Loxtercamp of his intention to resign effective November 1, 1984, but he later retracted this resignation. Bauer claims he once again informed Loxtercamp on November 15 that he was quitting but, because he did not know when he would be leaving, there was an understanding that Loxtercamp could replace Bauer without notice if it found a replacement and, if Bauer found another job, his resignation would be effective immediately. Loxtercamp contends there was no such understanding and that it didn't know of Bauer's intent to leave until he formally resigned effective December 16, 1984.

On approximately December 1, Bauer contacted Belgrade Cooperative regarding a possible job as a driver. They discussed the possibility of a new route in the Elrosa area. Bauer informed Belgrade he could bring a substantial number of his old customers over to Belgrade. Bauer was offered a job on December 10 starting Monday, December 17.

Loxtercamp was not informed of Bauer's intent to end his employment until Sunday, December 16, because Belgrade wanted to send a letter to Bauer's customers informing them of his new employment. Bauer testified he knew it would be more difficult to bring customers over to Belgrade if he had notified Loxtercamp any earlier.

Both Belgrade and Bauer worked on the letter, which was mailed on Saturday, December 15, knowing it would arrive the

following Monday. Belgrade also placed an ad in the Belgrade newspaper on December 19 informing the public of Bauer's new employment.

In response, Loxtercamp mailed to its customers a letter on December 17 advising them of Bauer's resignation and asking for their continued service. Loxtercamp also advertised in the local paper.

On January 10, 1984, Loxtercamp commenced this action claiming damages for breach of the duty of loyalty, unfair competition, deceptive trade practice, misappropriation of trade secrets and the intentional interference with contractual relations. Loxtercamp then filed a motion for a temporary injunction on January 14, which the trial court denied by an order dated January 30, 1984.

## ISSUE

Did the trial court abuse its discretion when it denied Loxtercamp's motion for a temporary injunction?

## ANALYSIS

■ Minn.R.Civ.P. 65.02 provides that "[a] temporary injunction may be granted if by affidavit, deposition testimony, or oral testimony in court, it appears that sufficient grounds exist therefor." *Id.* There are five factors to be weighed in determining whether a temporary injunction should be granted:

(1) the nature of the relationship between the parties before the dispute giving rise to the request for relief;

(2) the harm to be suffered by the moving party if the preliminary injunction is denied as compared to that inflicted on the non-moving party if the injunction issues pending trial;

(3) the likelihood of success on the merits;

(4) the public interest; and

(5) administrative burdens in enforcing a temporary decree.

*Edin v. Jostens, Inc.,* 343 N.W.2d 691, 693 (Minn.Ct.App.1984). The issuance of an injunction rests within the discretion of the trial court and its decision will not be set aside absent a clear abuse of such discretion. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 91 (Minn.1979).

The relief sought being interlocutory and the lower court having entered no findings, we are obliged to resolve the issues of fact on the basis of what appears from the pleadings to be undisputed and the admissions of the parties as disclosed by their affidavits.

*Sanitary Farm Dairies, Inc. v. Wolf,* 261 Minn. 166, 167, 112 N.W.2d 42, 43 (1961).

■ Loxtercamp argues he is entitled to an injunction because Bauer effectively misappropriated a trade secret when he reproduced a list of Loxtercamp's customers on Bauer's route. The supreme court in *Sanitary Farm Dairies* concluded that in "route" cases, the issue of whether an injunction should or should not be granted "hinges on principles of unfair competition rather than on the question of whether [the employer] has a property right in the names and addresses of the customers who were served by" the former employee. *Id.* at 169, 112 N.W.2d at 45. In *Wolf,* Wolf was employed as a driver to solicit customers and sell dairy products. Before he quit, Wolf successfully solicited 59 customers he had previously served on his employer's behalf. As in this case, Wolf argued his actions were merely in preparation for a change in employment. The supreme court disagreed and held that the employer was entitled "to such relief as would mitigate the consequences of [Wolf's] unfair competition." *Id.* at 176, 112 N.W.2d at 49. Because the employer was deprived of an opportunity to compete on even terms, the court suggested that it should have been given "an adequate opportunity to do its own soliciting." *Id.* at 177, 112 N.W.2d at 49.

Loxtercamp would normally be entitled to such relief as would mitigate the consequences of Bauer's unfair competition, i.e., the solicitation of several customers prior to his resignation. But, in waiting over a month before bringing an action for dam-

ages and its motion for a temporary injunction,[1] it had adequate time in which to solicit on its own. In fact, it did exactly that. On the first day of Bauer's new employment, Loxtercamp mailed a letter to its customers seeking their continued patronage. Therefore, a temporary injunction was not necessary.

Finally, Loxtercamp did not furnish the trial court with a list of those customers solicited by Bauer. Absent that, as the trial court astutely observed, "it is extremely difficult to determine to whom an injunction would apply."

### DECISION

Loxtercamp has an adequate remedy at law if he seeks money damages. Loxtercamp effectively prevented any unfair competitive advantage Bauer may have obtained when it immediately contacted its customers and sought their continued patronage. The trial court's order denying Loxtercamp's motion for a temporary injunction is affirmed.

Affirmed.

---

**1.** Loxtercamp claims only 2½ weeks passed before relief was sought but admits this motion was placed on the calendar after such relief was sought.